# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **ARTHUR TERRELL WILLIAMS,** } | |
| } | |
| Petitioner, } | |
| } | |
| v. } | Case Nos.:   2:14-CV-08012-RDP |
| } |                        2:11-CR-00074-RDP-HGD |
| **UNITED STATES OF AMERICA,** } | |
| } | |
| Respondent. } | |

## MEMORANDUM OPINION

The court has before it Movant's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. (Doc. #1). The Government has responded to the Motion (Doc. # 5), and Plaintiff has replied (Doc. # 6).

**I.      Procedural History**

In 2010, Arthur Terrell Williams committed two separate armed robberies. The first occurred in March 2010 at a Wachovia Bank in Adamsville, Alabama, where he forcibly robbed the tellers while brandishing a firearm. In the second, in May 2010, he robbed an armored car driver at gunpoint and stole cash and checks from the driver. (2:11-CR-74-RDP, Doc. # 107). In March 2011, a federal grand jury indicted Williams for the May 2010 Hobbs Act robbery and for using a firearm during the commission of that robbery. (2:11-CR-74-RDP). In July 2011, a federal grand jury indicted Williams for the March 2010 bank robbery and for using a firearm during the commission of that robbery (2:11-CR-252-AKK). Williams pleaded guilty to both of these robberies and to both counts of using a firearm during the commission of those robberies. (2:11-CR-74-RDP, Doc. # 107; 2:11-CR-252-AKK, Doc. # 51).

Williams cooperated with the Government and testified at his co-defendant Archie Atkins' trial in the Hobbs Act robbery case. Williams testified under oath at Atkins' trial that both he and Atkins possessed guns during this robbery and that Atkins actually pointed his gun at the victim during the robbery. (2:11-CR-74-RDP Doc. # 98 at 221-231)  Not only did Williams testify about the use of guns during the robbery at Atkins' trial, but at his plea hearing he also pleaded guilty to the fact of brandishing a firearm. (Doc. # 5-1).  During the plea hearing, the court specifically informed Williams that he was pleading guilty to the crime of brandishing a firearm during and in relation to the robbery. (Doc. # 5-1 at 12-13).  Judgment was entered on October 20, 2011. (2:11-CR-74-RDP Doc. # 83).  Because Williams did not appeal, his conviction became final fourteen days after judgment was entered.[1]

Although Williams's conviction became final in November 2011, he did not file the current Motion until over three years later, on March 24, 2014.  (2:11-CR-74-RDP Doc. # 83; Doc. # 1).

In his § 2255 Motion, Williams claims that he is "actually innocent" of "brandishing" the firearm during the Hobbs Act robbery and wants a trial to prove that he merely possessed the gun during the robbery.  (Doc. # 1).  Williams makes three arguments in support of his petition. First, he argues that he is actually innocent of the charges against him because he made an "involuntary" guilty plea due to incompetent legal advice.  (Doc. # 1 at 4).  Second, he argues that he is entitled to relaxation of AEDPA's one-year limitations period because he is "actually innocent" under *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1928 (2013) (Doc. # 1 at 7).  And third, he argues that his plea was involuntary because he claims his counsel erroneously told him that

---

[1] Where, as here, a defendant is convicted in federal court and he fails to pursue any direct appeal, his conviction is considered "final" for purposes of § 2255(f)(1) when the 14–day period to have filed a timely notice of appeal lapses. *Akins v. United States*, 204 F.3d 1086, 1089 n. 1 (11th Cir. 2000); *see also* Fed.R.App.P. 4(b)(1).

2

"brandishing," to which he pled guilty, was merely a sentencing factor, rather than a substantive element of the offense, and he was wrongfully deprived of his right to a jury trial. (Doc. # 1 at 9).

## II.     Discussion

### A.     Williams's Motion is Untimely

A federal prisoner may file a motion to vacate his or her sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). It is well settled that "to obtain collateral relief, a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). A collateral challenge, such as a § 2255 motion, may not act as a surrogate for a direct appeal. *See, e.g., United States v. Frady*, 456 U.S. 152, 165 (1982) (collecting cases).

Importantly, however, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year statute of limitations for filing a § 2255 motion. 28 U.S.C. § 2255(f). The one year limitation period runs from the latest of: (1) the date on which the judgment of conviction becomes final; (2) in the event the movant was prevented from making a motion by such governmental action, the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2255(f)(1)-(4).

Recognizing that his Motion was filed well after the one year limitations period expired, Williams argues that his Motion is not untimely because it was filed within one year of the Supreme Court's decision in *McQuiggin v. Perkins*, 133 S.Ct. 1924 (2013), which was decided on May 28, 2013.   (Doc. # 6).

In *McQuiggin*, the Court held that a showing of "actual innocence" as applied in *Schlup v. Delo*, 513 U.S. 298 (1995), and *House v. Bell*, 547 U.S. 518 (2006), can overcome the one-year statute of limitations applicable to habeas corpus petitions filed by state prisoners under 28 U.S.C. § 2254. *McQuiggin*, 133 S.Ct. at 1931, 1933.   Williams argues that *McQuiggin* similarly excuses the late filing of his § 2255 motion because he was given incompetent legal advice regarding whether "brandishing" was merely a sentencing factor (as opposed to an element of the crime). Williams asserts that this rendered his plea involuntary and, therefore, he is "actually innocent" because his conviction was based only on that plea.   (Doc. 6 at 3).   That is, Williams claims that, under *McQuiggin*, he is "actually innocent" because allegedly incorrect legal advice resulted in an involuntary plea. 133 S.Ct. at 1934. He further argues that this circumstance provides him a gateway to bypass the one-year statute of limitations for federal habeas review.   The court concludes this claim fails as a matter of law.

The Supreme Court and the Eleventh Circuit have recognized that the actual innocence doctrine applies in only two contexts: where the defendant claims that he is actually innocent of the crime of conviction, and where a defendant claims that he is actually innocent of a capital sentence. *See McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011); *Dretke v. Haley*, 541 U.S. 386, 388 (2004). As the *McKay* court explained:

> To show actual innocence of the crime of conviction, a movant "must show that it is more likely than not that no reasonable juror would have found [him] guilty

4

> beyond a reasonable doubt" in light of the new evidence of innocence. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *see also id.* at 332 (O'Connor, J., concurring). To show actual innocence of a capital sentence, a movant "must show by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found [him] eligible for the death penalty under the applicable state law." *Sawyer v. Whitley*, 505 U.S. 333, 336, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992); *see also Sibley [v. Culliver*, 377 F.3d 1196, 1205 (11th Cir.2004) ] (describing how a movant claiming actual innocence of his capital sentence must show that "he is 'innocent' of the death penalty because none of the aggravating factors legally necessary for invocation of the death penalty applied").

657 F.3d at 1196-97 (footnote omitted).

To invoke the "actual innocence" exception to the AEDPA's one-year time limit, a petitioner must (1) present new reliable evidence that was not presented at trial, and (2) show that it is more likely than not that "no reasonable juror would have found petitioner guilty beyond a reasonable doubt" in light of the new evidence. *See Rozzelle v. Sec'y, Fla. Dep't of Corr.*, 672 F.3d 1000, 1011 (11th Cir. 2012) (quoting *Schlup*, 513 U.S. at 324). To be credible, "such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324.

Williams has failed to show that he is entitled to this exception to the limitations period because he has failed to provide any evidence, let alone new evidence, that would suggest his innocence. *See Rozzelle*, 672 F.3d at 1011. Williams does not even contend that he is factually "actually innocent." Rather, he makes a legal argument that his allegedly involuntary plea should be nullified and, therefore, having not been convicted, he is "actually innocent." This misconstrues the concept of actual innocence. Actual innocence does not mean legal insufficiency of his conviction, but rather factual innocence. *McKay v. U.S.*, 657 F.3d 1190, 1197 (11th Cir. 2011).

5

"[A] claim of mere legal innocence, not factual innocence, [] cannot open up a gateway to consideration of his procedurally barred claims." *Kizziah v. U.S.,* 2014 WL 51282, *7 (N.D. Ala. 2014) (citing *Cannon v. United States*, 2012 WL 6019298, at *4 (M.D. Ga. 2012) (defendant's argument that he was actually innocent of the ACCA enhancement because two of his predicate offenses allegedly occurred on the same occasion was a claim of legal innocence only); *McKay*, 657 F.3d at 1199 (defendant's claim that a prior conviction for carrying a concealed weapon should not have been classified as a "crime of violence" under U.S.S.G. § 4B1 .2(a)(2) could only show that he was legally innocent of the enhancement, not that he was factually innocent); *United States v. Montano*, 398 F.3d 1276, 1285 (11th Cir .2005) ("In cases where the Government has foregone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges") (in turn quoting *Bousley v. United States*, 523 U.S. 614, 624 (1998)). Accordingly, Defendant's claim that his actual innocence under *McQuiggin* excuses his belated Motion is off the mark.

### B. Williams's Motion is Due to Be Denied on the Merits

Moreover, the entire premise of Williams's argument that counsel was incompetent for failing to advise him that "brandishing" was an element of the claim is without merit as evidenced by the following exchange from the plea hearing:

> THE COURT: All right.
>
> Count 2 of the indictment **charges each of you with the offense of violating 18 United States Code, Section 924(c), which is brandishing a firearm in furtherance of a crime of violence. That is a separate felony charge**. **Before either of you could be convicted of that charge, the government would have to prove the following facts beyond a reasonable doubt**:

> First, that each of you committed the crime of violence charged in Count 1 of the indictment. That's the robbery charge we just covered. **Second, that each of you knowingly brandished a firearm; and that third, you brandished the firearm in furtherance of the violent crime.**
>
> A firearm is any weapon designed to or which may readily be converted to expel a projectile by way of an explosive. And to brandish a firearm means more than a mere possession and more than the proximity and accessibility of the weapon. It requires active employment of the weapon as by waving or displaying it in some form or fashion.
>
> Brandishing a firearm in furtherance of a crime means the firearm helped, promoted, or advanced the crime in some way.
>
> Do each of you understand the charges made against you in Count 2?
>
> DEFENDANT WILLIAMS: Yes, sir.

(2:11-CR-74-RDP, Doc. # 107 at 12-13) (emphasis added).

Thus, whether or not Williams's attorney informed him in advance of the plea hearing that brandishing was an element of the offense, the court clearly explained to Williams that brandishing was indeed an element of the charge to which he was pleading guilty. Williams acknowledged that he understood the charge of brandishing against him. Furthermore, Williams was present for a detailed discussion immediately following this exchange which further explained the brandishing charge to his co-defendant who appeared at the same hearing and (unlike Williams) expressed some confusion about the charge. (2:11-CR-74-RDP, Doc. # 107 at 13-15).

"[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988). "There is a strong presumption that the statements made during the [guilty plea] colloquy are true." *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). Williams's own sworn

statements made in open court that acknowledged he understood he was then charged with a separate count of brandishing. He was also plainly told that the government would be required to prove brandishing as an element of the charged offense and he acknowledged, while under oath, that he understood that to be so. These admissions (again, made under oath) render Williams ineligible to pursue the relief he seeks. That is, such statements refute Williams's claim that his plea was involuntary because he had not been so advised at the time he entered his plea.

### III. Conclusion

A defendant's representations regarding the voluntary nature of his plea at the plea hearing "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Petitioner has failed to demonstrate that his guilty plea was involuntary or that he is "actually innocent." Thus, his Motion is not only procedurally barred, but also fails on the merits. A separate order will be entered.

The Clerk is **DIRECTED** to serve a copy of this Order upon Petitioner.

**DONE** and **ORDERED** this June 5, 2015.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE